IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TONY ARAMBULA,

    Plaintiff,

v.                                    Civil Action No. 3:10CV121

M. CLARKE,

    Defendant.

**MEMORANDUM OPINION**

Plaintiff Tony Arambula, a former Virginia prisoner proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983. Arambula contends that, while incarcerated at the Deep Meadow Correctional Center ("DMCC"), Dr. Clarke[1] denied him adequate medical care in violation of the Eighth Amendment.[2] Dr. Clarke has moved for summary judgment on the grounds that, inter alia, Arambula failed to exhaust his administrative remedies. Arambula has responded. The matter is ripe for disposition.

---

[1] The Court notes that Dr. Clarke's last name is spelled with an e. The Clerk shall correct the docket to reflect the correct spelling for Dr. Clarke's name.

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

## I. SUMMARY OF RELEVANT ALLEGATIONS

In June of 2009, a lump on Arambula's chest, which Dr. Clarke previously had diagnosed as a benign cyst, became infected. The infected cyst caused Arambula extreme discomfort for the next month or so.

On August 4, 2009, Arambula was scheduled to go to the Medical College of Virginia ("MCV"). While en route to MCV, the cyst erupted. At MCV, a doctor examined the lump and diagnosed it to be "an abscess." (Compl. 4.)[3] Arambula underwent a "fairly simple" procedure to treat the abscess. (Id.) The procedure left Arambula with a "wound [which] was not stitched or stapled." (Id.) The doctor provided a medical order to the DMCC medical staff to treat the wound with a "'wet to dry' treatment, once daily." (Id.)

Two nurses at DMCC told Arambula that DMCC protocol required "Dr. Clark[e] to follow-up with inmates returning from MCV within days." (Id. at 5.) Nevertheless, no follow-up occurred. After returning to DMCC and receiving treatment, there was little evidence that the wound was closing. Therefore, Arambula requested to see Dr. Clarke. On August 24, 2009, Dr. Clarke examined Arambula and immediately determined

---

[3] Because the Complaint does not contain a consistent page numbering system, the Court will utilize the page numbers assigned to the Complaint by the Court's CM/ECF system.

2

that the wound was not healing properly because the nurses at DMCC were "'not packing it properly.'" (Id. at 4.)

During September and November of 2009, Dr. Clarke treated Arambula several times. "[E]ach time" she expressed her frustration that the wound was not being properly packed. (Id.) "After Dr. Clark[e] told [Arambula] and several nurses on sep[a]rate occasions that they weren't packing [the wound] properly, nothing changed." (Id. at 5.) Finally, in November of 2009, Dr. Clarke "took over the responsibility of treating [Arambula] but that didn't last long with her schedule and the upcoming holidays." (Id.) In late November of 2009, "Dr. Clark[e] treated the site, then went through [Arambula's] medical file and again expressed her disappointment that her last order to send [Arambula] back to MCV was never scheduled by her staff." (Id. at 4-5.) In January of 2010, because the wound did not heal properly, Arambula underwent further corrective surgery to address the wound.[4]

---

[4] The Court notes that in opposition to the Motion for Summary Judgment Arambula also complains about inadequate medical care in the Spring of 2010 with respect to cysts in his groin area. (Pl.'s Opp'n Mot. Summ. J. 5-6.) Arambula specifies, "This testimony is not additional grounds of violations but merely testimony for this Court to determine its final verdict." (Id. at 5 (capitalization corrected).) Given these circumstances and Arambula's failure to seek leave, as he must, to amend his complaint, the Court does not deem these allegations to raise any new claim for relief. See Begay v. Stansberry, No. 3:09cv578, 2010 WL 2077016, at *3 (E.D. Va. May 24, 2010) (citing cases for the proposition that a party cannot

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"

---

informally raise new claims in its response to a motion for summary judgment).

4

Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 & n. 7 (5th Cir. 1992)); see Fed. R. Civ. P. 56(c)(3) ("The court need consider only cited materials, but it may consider other materials in the record.").

Here, Dr. Clarke contends that Arambula's claim must be dismissed because Arambula failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Dr. Clarke shoulders the burden to plead and prove lack of exhaustion. Jones v. Bock, 549 U.S. 199, 216 (2007). In support of this contention, Dr. Clarke has submitted the declaration of Marci Seay, the Institutional Ombudsman at DMCC. (Mem. Supp. Mot. Summ. J. Ex. 4 ("Seay Decl.") Additionally, Dr. Clarke has tendered a copy of the pertinent Virginia Department of Corrections ("VDOC") regulations pertaining to the grievance system (Id. Ex. B ("Grievance Procedure")) and copies of Arambula's grievances. (Id. Ex. A.) Arambula has responded by submitting his own sworn brief opposing the Motion for Summary Judgment. (Docket No. 29.) In light of the foregoing principles and submissions, the facts set forth below are established for purposes of the Motion for Summary Judgment.

5

### III. SUMMARY OF PERTINENT FACTS

#### A. VDOC's Grievance Procedure

The VDOC maintains a grievance procedure for resolving inmate complaints. The pertinent VDOC regulations require that, before submitting a formal grievance, the inmate must demonstrate that he or she has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. (Grievance Procedure § 866.1.V.A.) Generally, this requires an inmate to file an informal complaint form. (Id. § 866.1.V.A.1.) If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out a standard form. (Id. § 866.1.VI.A.2.)

"The original Regular Grievance (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Warden/Superintendent's Office for processing by the Institutional Ombudsman/Grievance Coordinator." (Id. § 866.1.VI.A.2.b.(spacing corrected).) The offender must attach to the regular grievance a copy of the informal complaint. (Id. § 866.1.VI.A.2.a.) Additionally, "[i]f 15 calendar days have expired from the date the Informal Complaint was logged without the offender receiving a response, the offender may submit a Grievance on the issue and attach the Informal Complaint receipt as documentation of the attempt to resolve the issue

informally." (Id. § 866.1.V.A.2.) A formal grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (Id. § 866.1.VI.A.1.)

Up to three levels of review exist for a regular grievance. (Id. § 866.1.VI.C.) The warden or superintendent of the facility in which the offender is confined conducts the Level I review. (Id. § 866.1.V.C.1.) If the offender is dissatisfied with the determination at Level I, he may appeal the decision to Level II. The VDOC Regional Director, the VDOC Health Services Director, or the VDOC Chief of Operations for Offender Management Services conducts the Level II review. (Id. § 866.1.VI.C.2.) The Level II response informs the offender whether he or she may pursue an appeal to Level III. (Id. § 866.1.VI.C.2.f.) An offender has "5 calendar days upon receipt of a response to appeal to the next level, if such appeal is available." (Id. § 866.1.VI.D.6.)

B. **Arambula's Grievances Filed At DMCC**

On November 13, 2009 and December 7, 2009, Arambula filed informal complaints, complaining he had been receiving inadequate medical treatment for his wound. (Seay Decl. Ex. A

1, 3.)[5] Thereafter, on December 9, 2009, Arambula filed a regular grievance asserting that medical staff were providing inadequate treatment. (Id. at 2.) On December 29, 2009, Warden Baskerville responded to Arambula's regular grievance. (Id. at 6.) Warden Baskerville concluded, "Your grievance is unfounded. Staff correctly applied the physician's orders . . . ." (Id.) Warden Baskerville informed Arambula that if he was dissatisfied with this Level I response, he could pursue a further appeal to the Health Services Director within five calendar days. (Id.) Arambula did not pursue an appeal. (Seay Decl. ¶ 6.)

On December 9, 2009, Arambula also filed an emergency grievance generally complaining about the lack of appropriate medical treatment. (Seay Decl. Ex. A 5.) The pertinent prison rules require that emergency grievances become available only "[i]f the issue subjects the offender to immediate risk of serious personal injury or irreparable harm." (Grievance Procedure § 866.1.VII.E.3.) Arambula's emergency grievance did not meet this criteria; therefore, the pertinent prison official returned the emergency grievance to Arambula. (Id.; Seay Decl. ¶ 5.)

---

[5] Because Exhibit A does not contain a uniform page numbering system, the Court will utilize the page numbers assigned to this exhibit by the Court's CM/ECF system.

8

## IV. EXHAUSTION ANALYSIS

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983) or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[6] This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." Booth v. Churner, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal. See Woodford v. Ngo, 548 U.S. 81, 90 (2006). Additionally, the Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." Id. at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," id. at 90, "'so

---

[6] Arambula's release from prison after he filed this action does not excuse Arambula from his obligation to exhaust his administrative remedies under 42 U.S.C. § 1997e(a). Hardee v. Turner, No. 5:09-CR-3199-FL, 2011 WL 2173624, at *1 n.1 (E.D.N.C. June 2, 2011) (citing Cox v. Mayer, 332 F.3d 422, 424-25 (6th Cir. 2003); Ahmed v. Dragovich, 297 F.3d 201, 210 (3rd Cir. 2002); Dixon v. Page, 291 F.3d 485, 488-89 (7th Cir. 2002)).

that the agency addresses the issues on the merits.'" Id. (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

### A. Arambula's Emergency Grievance

The applicable prison rules "define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). Arambula's emergency grievance did not qualify as a proper emergency grievance under the pertinent prison rules. Specifically, Arambula's emergency grievance did not reflect that Arambula faced an "immediate risk of serious personal injury or irreparable harm." (Grievance Procedure § 866.1.VII.E.3.) Thus, Arambula's submission of the emergency grievance did not satisfy his obligation to exhaust his administrative remedies. See Moore v. Bennette, 517 F.3d 717, 729-30 (4th Cir. 2008); Wells v. Cain, No. 7:07cv00418, 2008 WL 474125, at *2-3 (W.D. Va. Feb. 20, 2008).

### B. Arambula's Regular Grievance

Because Arambula failed to pursue an appeal with respect to the denial of his regular grievance, he failed to exhaust his administrative remedies. See Woodford, 548 U.S. at 90. Arambula suggests that his failure to pursue an appeal of his regular grievance should be excused because, by the time he received a response to the grievance, he had learned that he was scheduled for surgery. (Pl.'s Opp'n Mot. Summ. J. 4.)

10

Arambula fails to explain why such a circumstance relieves him of his responsibility to pursue an appeal with respect to the alleged denial of adequate medical care by Dr. Clarke. The crux of Arambula's lawsuit is the denial of adequate medical care by Dr. Clarke. The fact that Arambula learned he was to receive additional medical care does not excuse him from pursuing all available administrative remedies concerning his prior assertion that he had received inadequate medical care. Sims v. Nguyen, 403 F. App'x 410, 413 (11th Cir. 2010); Glaster v. Fed. BOP-Inmate Designation & Custody Classification Personell/Officer, No. 3:CV-08-0193, 2009 WL 2515787, at *3-4 (M.D. Pa. Aug. 13, 2009). Accordingly, Dr. Clarke's Motion for Summary Judgment (Docket No. 27) will be granted.

Although the normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice, see, e.g., Booth, 532 U.S. at 735, dismissal with prejudice may be appropriate "where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2004); see Van Houten v. Marlett, 330 F. App'x 161, 162-63 (10th Cir. 2009); Lee v. Clarke, No. 3:11CV135, 2011 WL 3840979, at *5 (E.D. Va. Aug. 29, 2011). That is the case here. Arambula failed to file a proper regular grievance and pursue an appropriate appeal within the

11

time limits required by the VDOC Grievance Procedure. (Grievance Procedure §§ 866.1.VI.A.1, 866.1.VI.D.6.) Arambula has not demonstrated that any special circumstances excuse his failure to utilize the administrative remedies within the established time frame. Accordingly, the action will be dismissed with prejudice.

With considerable consternation, the Court notes that the record shows the nursing staff was improperly treating Arambula's wound and that Dr. Clarke knew that to be the case. On several occasions, she instructed the nursing staff how to treat him directly. She had every right to expect that her instructions would be followed when she first gave them.

However, when she knew that her twice repeated instructions were not being followed, she continued to follow the same course: on several subsequent occasions issuing instructions which she knew were not being followed. Only later, did Dr. Clarke take on the treatment of the wound herself.

One would expect the record here to show that the nursing staff was disciplined or fired for persistent refusal to abide by a doctor's instructions. The record does not so reflect. Whether that is because of counsel's oversight or because the nurses were not disciplined or fired, one cannot discern. And, perhaps it is too late now to remedy that circumstance. The record does not tell us that either.

12

However, it would be wise for the prison officials and Dr. Clarke and any other doctors in the prison to instruct the nursing staff that failures of the sort that appear in this record will not be tolerated. Indeed, an inmate subjected to similar neglect might not fail to exhaust administrative remedies. Then, the outcome of that inmate's legal action might be quite different than the outcome here.

The Clerk is directed to send a copy of the Memorandum Opinion to Arambula and counsel of record, and counsel of record shall assure that a copy of this Memorandum Opinion shall be delivered to the Warden, the nursing staff and the doctors at Deep Meadow Correctional Center and counsel shall certify compliance with this directive.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 23, 2012